## Hart *et al. versus* Kelley.

1. In an action to charge H. as a partner of P. and F., he filed an affidavit of defence which set forth that he was not a partner, and that his only connection with them was this: that after the work, to recover for which the suit was brought, was in great part performed, he signed an agreement with P. and F. to advance them money in their business, and to receive, in lieu of interest, a share in the net profits of the firm; that he never did advance any money under this agreement, but, on the contrary, the agreement was rescinded immediately after it was made.

*Held* (reversing the court below), that the affidavit was sufficient, that the agreement did not constitute H. a partner, and the case ought to have gone to a jury.

2. *It seems*, that even if considered a partner, H. would not, *ipso facto*, be liable for the debts of the firm incurred before the date of this agreement, and that he would not be liable for any debt incurred by the firm after his withdrawal to one who never knew of his connection with the firm.

3. Per PAXSON, J.—One who agrees to advance money to a firm, receiving a share of the profits in lieu of interest, does not, *ipso facto*, become a partner, since the Act of 6th April 1870, if he has not held himself out to the world as a partner; especially where he has never received any profits.

January 16th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Philadelphia county:* Of January Term 1877, No. 49.

Assumpsit by H. H. Kelley against A. Hart, Pincus, Faucett, Sauter and Clarence A. Hart, for work and labor alleged to have been done about the defendants' property, as shown by the copy of book entries filed.

[Hart *v.* Kelley.]

The defendant, C. A. Hart, filed an affidavit of defence, as follows :—

" That neither he nor any one for him, either individually or in partnership, or jointly with others, obtained from the plaintiff the work and materials charged for in this suit, nor is he indebted to the plaintiff on any account whatever."

Afterwards, by order of court, he filed a supplemental affidavit, as follows :—

" That he has a full defence to the whole of the plaintiff's claim, the nature of which is as follows : That he is informed and believes that, prior to December 13th 1875, one Edward Pincus and one Hiram W. Faucett became co-partners, trading under the firm-name of the International Restaurant and Hotel Company; that on December 13th 1875, the said Pincus and the said Faucett, so trading, leased the premises No. 1220 Chestnut street, in the city of Philadelphia, for the purpose of carrying on at that place the business of a hotel and restaurant; that in order to properly fit up the said premises for the proposed business, considerable plumbing work was necessary to be done, and the said Faucett and the said Pincus, so trading as aforesaid, agreed with the said plaintiff, that he, the said plaintiff, should do the work; that the said plaintiff, being unwilling to do the work on the credit of the said Faucett and Pincus, required better security, and it was agreed that Abraham Hart should become responsible; that thereupon, and in pursuance of the said agreement, the said plaintiff did work and furnished materials to the premises 1220 Chestnut street, which work and materials constitute the greater portion of the plaintiff's claim in this case, to wit: the items charged between December 16th 1875, and about February 25th 1876; that this deponent had nothing to do with the said agreement, nor with the ordering of said work, nor did he ever assume to be a partner with the said Faucett and Pincus, or hold himself out as such, nor was the work done on his credit in any manner, but on the contrary thereof the said plaintiff well knew that the lease of the premises in which he was making the fixtures for which he claims, was in the said Pincus and Faucett, in whom the same has remained from that time hitherto; that after the completion of the work by the plaintiff, he presented his bill, and received for the amount thereof, $500 in cash, and the promissory notes of Abraham Hart for the balance, which is the amount claimed in this suit; that he, the plaintiff, accepted said promissory notes of said Abraham Hart, and brought suit thereon against the said Abraham Hart, in the Court of Common Pleas, No. 4, of this county, to June Term 1876, No. 947, and recovered judgment against said Abraham Hart in said suit, which suit and judgment were for the same matters as this present suit.

" That the only connection this deponent ever had with the other

defendants, in the matter of the International Hotel and Restaurant, was the following: That sometime after the agreement between Faucett and Pincus on the one hand, and Kelley on the other, and when the greater part of the work contracted to be done by the said plaintiff, Kelley, had already been done, to wit, on or about January 7th 1876, this deponent of one part, with Edward Pincus, Paul Sautter and Abraham Hart, signed an agreement, erroneously dated December 13th 1875, with the aforesaid Hiram W. Faucett of the other part, wherein and whereby he, the said deponent, and the parties joining with him, agreed to furnish the said Faucett of the other part, as a loan, such amounts as might be necessary to carry on the business at 1220 Chestnut street for one year, in compensation for which loan the said deponent, and the parties joining with him, were to receive, in lieu of interest, three-fourths of all net profits; that this deponent, immediately after the signing of the agreement, found that he would be unable to furnish any money to the said Faucett and Pincus, and hence refused to act under the agreement; that he furnished no money to the said Faucett and Pincus, nor did he ever receive any profit or advantage from the business, nor did he ever perform any act whatever under the said agreement, but on the contrary thereof, immediately after the execution of the said agreement, the same was rescinded by the parties thereto, so far as this deponent was concerned; that subsequently, to wit, on March 23d 1876, this deponent, being thereunto requested, acknowledged this rescission in writing, by an instrument written on the same paper whereon the previous agreement had been written, acknowledging that all the interest he, the said deponent, had had in the International Restaurant, had been theretofore disposed of to the said Pincus, Sautter, and Abraham Hart; that copies of said agreement and acknowledgment are hereto annexed, marked 'A' and 'B' respectively.     *     *     *

"That this deponent was not, at any of the times at which the work and materials claimed for by the plaintiff were done and furnished, in partnership with the other defendants, nor did he, or any one for him, either individually or in partnership with any one else, order, procure, or receive any of the said work and materials, nor is he indebted to the said plaintiff in any manner, or on any account whatever.'

### A.

"Whereas, Hiram W. Faucett, of the city and county of Philadelphia, and state of Pennsylvania, having the knowledge and ability to organize and manage the business under the name and title of the International Restaurant and Hotel Co., for which purpose the said H. W. Faucett and Ed. Pincus have leased the property No. 1220 Chestnut street, and that he, the said H. W. Faucett, agrees to give his personal attention to the successful management and development of the business, for the purpose of promoting its

[Hart *v.* Kelley.] ·

character and making it profitable: It is therefore agreed between the said Hiram W. Faucett of the first part, and Ed. Pincus, C. A. Hart, Paul Sautter and Abm. Hart, all of the city of Philadelphia, and state of Pennsylvania, of the second part,—that the party of the second part will furnish such amounts as may be necessary to carry on the business for one year at 1220 Chestnut street, on the terms as follows :—

"That the party of the second part shall be entitled to receive three-fourths of all net profits, and the said party of the first part, the other one-fourth part of said net profits, but before any party, either of the first or second part, shall be entitled to receive any dividends of profits, the sum or sums loaned or furnished by the party of the second part, or any one of them, shall first be returned or paid back to said party of the second part, after which the profit to be divided shall be as follows: One-fourth of the whole of net profits to Hiram W. Faucett, and the remaining three-fourths of said net profits to be divided equally, share and share alike, to said Paul Sautter, Eli Pincus, C. A. Hart and A. Hart, party of the second part.

"It is also understood and agreed by and between all the parties to this agreement, that the restaurant shall be carried on at the premises No. 1220 Chestnut street, by Messrs. Faucett, Pincus and Sautter, who will each use their best undivided exertions and influence to make it profitable, without any further remuneration than the interest they have in the undertaking.

"It is further understood and agreed that all sums to be received under this agreement shall be paid to A. Hart, one of the party of second part, who shall also receive the daily amount of sales, and make all disbursements, and out of the net profits, as soon as any may be set aside, the said A. Hart shall return to each party of the second part the sum or sums so furnished, before any dividend of the profits shall be made.

"The cost of fitting up the said premises, as well as all outlay for furnishing, &c., shall be considered as expenses to be first deducted, and moneys borrowed or furnished returned before dividing any profits.

"Witness our signatures, this 13th day of December 1875. ·

"Witnesses present:           H. W. FAUCETT,
  "J. B. RUSH,               E. PINCUS,
  "JAMES A. MOSS.         PAUL SAUTTER,
                       CLARENCE A. HART,
                       A. HART."

### B.

"Whereas, The within-named Clarence A. Hart having disposed of all his interest in the International Restaurant and Hotel Company to Edward Pincus, Paul Sautter and Abraham Hart,—they

2 NORRIS—19

· [Hart *v.* Kelley.]

will therefore each be entitled to one-fourth interest in the whole, instead of one-fourth of three-fourths, as stipulated in the foregoing articles of agreement.

"Philadelphia, Pa., March 23d 1876.

"Witness,                                    CLARENCE A. HART,
"G. B. BROWN, JR.        ₀          H. W. FAUCETT,
                                             PAUL SAUTTER,
                                             A. HART,
                                             E. PINCUS."

The court below entered judgment for want of a sufficient affidavit of defence; whereupon C. A. Hart, one of the defendants, brought this writ of error, assigning this judgment for error.

*M. Sulzberger* and *B. H. Brewster*, for the plaintiff in error.— The agreement in this case was but an agreement for the loan of money—not partnership articles; since the Act of 6th April 1870, it does not constitute C. A. Hart a partner.

Even if it constituted him a partner, it was rescinded before being acted upon. An inchoate partnership must be complete before any liability can attach: Howell *v.* Brodie, 6 Bing. N. C. 44; Irwin *v.* Bidwell, 22 P. F. Smith 244; Gabriell *v.* Evill, 9 M. & W. 297.

Hart was certainly not liable after the rescission.

Even if he became a partner, there is no presumption that he adopted the existing debts of the firm: Ex parte Fry, 1 Glyn. & J. 96; Pars. on Part. 148–9.

*W. Ernst*, for the defendant in error, argued upon the construction of the agreement.

Mr. Justice PAXSON delivered the opinion of the court, January 29th 1877.

The rule of law formerly prevailing, that participation in the net profits of a business made a participant liable to third parties as a partner, has been greatly modified in England and this country. Thus, in Dean *v.* Harris, and Harris *v.* Butterfield, Law Times Reports, N. S., vol. 33, p. 639, Butterfield, who was a person of small means, applied to Harris to advance him money for the purpose of developing certain mines. Harris consented to lend Butterfield 2000*l.*, upon certain terms, viz.: That B. having entered into an agreement to take a lease of the Leycett mines, that the said mines be worked under the style or firm of the Leycett Mining Co.; that said H. find capital to work the mines to an extent not exceeding 2000*l.*; that the money so advanced shall be repaid with 20 per cent. interest; the said H. to be paid 3*d.* per ton on all coal and iron stone, by way of commission. The said B. to be paid 200*l.* per annum by way of salary, but not to take date until the sum or

[Hart v. Kelley.]

sums advanced by said H. be repaid; said B. to promote the interest of the concern and continue in receipt of salary so long as he should conduct the business to the satisfaction of H. After payment of the above, and costs of raising and preparing and delivering to market the product of said mines, said H. shall be entitled to three-fourths of the profits, and all the net proceeds of the concern to be disposed of in the like proportion; said H. to be free from all liability except in respect of the money advanced by him. The vice-chancellor held, that there was no partnership, saying: "All that H. did was consistent with his character as capitalist, assisting B. in carrying on business. All that is said to constitute a partnership. If it could. it would be most unsafe for any man to lend a tradesman any sum of money, and to look after the best means he could get for its repayment." Mollroo, March & Co. v. The Court of Wards, Law Rep. 4 P. C. 419, is perhaps a stronger case than Dean v. Harris. To the same point is Cox v. Hickman, House of Lords Cases, vol. 8, p. 268. In this state the Act of 6th April 1870, Purdon 1121, pl. 15 (Pamph. L. 56), expressly provides that, "it shall be lawful for any person or persons to loan money to any individual, firm, association or corporation, doing business in this Commonwealth, upon agreement to receive a share of the profits of such business as compensation for the use of the money so loaned, in lieu of interest, and such agreement, or the reception of profits under such agreement, shall not render the person or persons liable as a co-partner in such business to other creditors of such individual, firm, association, except as to the money loaned," &c., &c. It is by the light of the law thus modified by judicial decision and legislative enactment that we must examine and construe the agreement of December 13th 1875, which was attached to the supplemental affidavit of defence, and forms a part thereof. We assume that the court below held, that this agreement, as to the parties thereto, created a partnership inter se. In any other view of the case the supplemental affidavit of defence was ample to prevent judgment. The agreement was evidently drawn by a layman and was probably intended to come within the provisions of the Act of 1870. So far as the defendant below is concerned, it provides for two things, viz.: 1st. A loan or advance by him to Faucett and Pincus of such an amount of money as may be necessary to enable the latter to carry on the restaurant at No. 1220 Chestnut street for one year; and 2d. A division of the profits after such loan or advances are repaid. If the defendant can be held liable at all to creditors under said agreement it must be by reason of his right to a participation in the profits. It is not alleged that he held himself out to the world as a partner, and that any one was induced to give credit to Faucett and Pincus by reason of his connection with them. The advance of the money would not of itself constitute the defendant a partner. The participation in

[Hart *v.* Kelley.]

the profits might make him one, but not necessarily so. It would depend upon the intention of the parties as expressed by the terms of their agreement. There were to be no profits divided until the advances were repaid.

If, as was alleged upon the argument, no profits were ever made, and of course none divided, and the advances were not even repaid, the time never arrived when the defendant became a partner by reason of his participation in the profits. This was precisely the case in Dean *v.* Harris, *supra*, in which the vice-chancellor held that a participation in the profits might have made Harris liable as a partner, but inasmuch as the business was unprofitable and no profits were ever made, he could not be held for such reason. Here the defendant pointedly denies any participation in the profits. Such denial ought to have carried the case to a jury. Again, he swears distinctly, that he never acted under said agreement, being unable to comply and advance the money, and that as to him said agreement was rescinded *immediately* after its execution. If this be so, and we are bound to assume it, he would not be liable in any view we may take of the agreement, for any debt incurred after his withdrawal, at least not to a creditor who never had knowledge of said agreement, and never trusted Faucett and Pincus on that account. Aside from all this, however, this suit is for a claim against Faucett and Pincus, upon a contract made with them prior to the agreement of December 13th. For the purposes of this case we must treat said agreement as of the date of January 7th, the defendant having sworn that the date of December 13th was erroneous. A large proportion of the work was done prior to January 7th. Assuming the defendant to have become a partner, he did not assume the debts of Faucett and Pincus. There is not a word in the agreement which binds him to pay any of their old debts. A partner who enters a firm already established, does not thereby become liable for the debts of the old firm. Nothing but an express agreement will render him so liable. If it be said that as to so much of the work as was done after January 7th, it enured to the benefit of the defendant, the answer is that the fact is not so. He acquired no title to the leasehold and fixtures by reason of the agreement. They were, and continued to be the property of Faucett and Pincus. The clause in the agreement that " the cost of fitting up the said premises, as well as all outlay for furnishing, &c., shall be considered as expenses to be first deducted before dividing any profits," does not render the defendant liable for a debt which he never contracted. In the most favorable light for the plaintiff, it is but an assumption of his claim so far as there may be profits out of which to pay it. He merely agrees that it may be paid out of profits before his own claim for advances. This imposes no personal responsibility upon him.

We think this case ought to have gone to a jury. We therefore reverse the judgment and award a *procedendo*.