## Waverly Nat. Bank., Appellant, v. Hall et al.

[Marked to be reported.]

*Conflict of laws—Lex loci contractus—Performance.*

Matters connected with the performance of a contract are governed by the law prevailing at the place of performance.

Where a contract for the loan of money to a person about to embark in business in consideration of a share of the profits was made in Pennsylvania but the business was to be conducted in New York, the question whether there was under the contract a liability as partners as to third persons was a matter connected with the performance of the contract, and consequently to be determined by the law of New York.

*Partnership—Sharing in profits.*

In New York, one who has no interest in the business of a firm or in the capital invested save that he is to receive a share of the profits as a compensation for services, or for money loaned for the benefit of the

business, is not a partner and cannot be held liable as such by a creditor of the firm: Richardson v. Hughitt, 76 N. Y. 55; Curry v. Fowler, 87 N. Y. 33; Cassidy v. Hall, 97 N. Y. 159.

Defendants agreed to furnish to a third party, in consideration of a share of profits, a certain sum of money from time to time as he might need it, to be used in a business established by him, its repayment to be secured by chattel mortgage, with option to repay it before the expiration of the full term for which he had the right to demand it. Defendants were to have access to the books, but no control of the business, and it was expressly agreed that there was to be no partnership except as to the profits; with agreement to arbitrate; also to continue business on death of any party.

*Held* that the agreement, under the decisions of New York, did not create a partnership as to third persons, but that the relation was that of lender and borrower.

In Pennsylvania such contract would have been construed in the same way, under Act of April 6, 1870, P. L. 56, and Hart v. Kelly, 83 Pa. 286.

Argued March 16, 1892. Appeal, No. 217, Jan. T., 1892, by plaintiff, the First National Bank of Waverly, from judgment of C. P. Bradford Co., Dec. T., 1889, No. 323, on verdict for defendants, S. C. Hall et al., late trading as C. M. Crandall. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit on promissory notes signed by Crandall.

The facts appear by the opinion of the Supreme Court.

The agreement of Feb. 24, 1885, between Crandall and defendants provided as follows:

"1. The said Charles M. Crandall, for and in consideration of the agreements of the said party of the second part, hereinafter expressed, agrees to remove to Waverly, Tioga county, New York, and there establish and operate a factory for the manufacture of the toys heretofore made by him, and known as Crandall's Building Blocks, Toys and Games, for a period of five years from this date, under all patents and inventions now owned or controlled by said C. M. Crandall.

"2. The said C. M. Crandall hereby agrees to take charge of said factory and to devote his entire business time, skill, energy, and ability to the manufacture and sale of said goods, and to the invention and manufacture and sale of new goods. If the said C. M. Crandall shall obtain any letters patent on any inventions or improvements which he shall invent or make during said time, all expenses attending said letters

patent shall be paid by the said C. M. Crandall, shall not be charged, said business and said letters patent shall be his exclusive property and shall not belong to or be any part of said business ; but the said C. M. Crandall hereby agrees to, and does grant the right to said business to manufacture and sell under any and all of his letters patents and inventions which he may hereafter obtain and make, without any charge whatever therefor during the continuation of this agreement.

" 3. The said C. M. Crandall hereby agrees to keep regular books of account, or cause the same to be done under his supervision, in which books all business transactions of this concern shall be entered; which books shall be accessible at all times to all or either of the said parties of the second part herein named.

" 4. It is hereby agreed that the said C. M. Crandall shall have the entire control of the manufacturing, sales, and all things appertaining to the management of this business, and that he shall be allowed to draw for his services in superintending said business from the funds of the concern the sum of twenty-five dollars per week weekly, fifteen dollars per week of which amount shall be charged as part of the expenses of said business and the balance above said fifteen dollars per week shall be repaid by said Crandall at the end of each year and he shall be allowed four per cent on the gross amount of the sales for that purpose. It is hereby agreed that the said C. M. Crandall shall have sixty per cent of the net profits of said business, after first deducting all the expenses and losses thereof, including six per cent per annum on the money invested as working capital and machinery.

" 5. The said parties of the second part in consideration of the above agreement on the part of the said C. M. Crandall and the further considerations hereinafter expressed do hereby agree to furnish or cause to be furnished to the said C. M. Crandall a sum of money not to exceed three thousand dollars as working capital for said business; and the said C. M. Crandall hereby agrees to use said money solely and entirely for that purpose. Said sum of money shall be furnished as aforesaid by said party of the second part from time to time, and at such times during said term as the said C. M. Crandall shall require the same. The said party of the second part or those

from whom they cause said money to be furnished shall be paid by said business six per cent per annum on all sums so furnished upon the requisitions of the said C. M. Crandall (which said six per cent per annum shall be charged to said business as part of the expenses thereof) ; and said party of the second part shall be paid for raising or guaranteeing the payment of the money so raised and used in said business forty per cent of the net profits thereof, after deducting all the expenses and losses of the same.

" 6. It is hereby agreed that there shall be an annual adjustment and audit of the affairs of this concern on the first day of February of each year, and a division of the profits, if any, then made.

" 7. It is hereby further agreed that at the expiration of the second year the said C. M. Crandall shall have the right to repay one thousand dollars of the money as aforesaid advanced, and from and after such payment the said party of the second part shall receive but two thirds of forty per cent of the net profits as aforesaid. At the expiration of the third year, the said C. M. Crandall shall have the right to repay one thousand dollars of the money so advanced as aforesaid and from and after such payment the said party of the second part shall receive but one third of forty per cent of the net profits as aforesaid. And at the expiration of the fifth year the said C. M. Crandall shall have the right to repay the balance of the money then remaining so advanced, and from and after such payment this agreement shall terminate and be fully ended, and if the said C. M. Crandall shall not make any of the payments at the time above stated, it is hereby agreed that he shall have the right to make the same at the close of any succeeding year during said term, and upon the same conditions as above stated. The parties of the second part shall have a chattel mortgage lien upon the tools, machinery, furniture and fixtures of every kind and nature belonging to or connected with said business in the usual form of chattel mortgage as security for their guaranty for the repayment of the money so raised, which mortgage shall be canceled when the last payment is made ; nothing in this writing shall be construed to create a partnership between the respective parties except with respect to the net profits as herein provided, and in consideration thereof the parties of the second part guarantee to the party

of the first part a continuous credit limited to $3,000 upon the terms and considerations above set forth.

" 8. It is hereby agreed that in case of the death of any of the parties to this agreement the business may be carried on under this agreement by the legal representatives of the deceased party until the expiration of the said term, if the survivor or survivors and such legal representatives can agree so to do.

" 9. In case of a disagreement of any sort of so serious a character that the parties hereto, or any of them, shall determine to end this agreement, the party desiring to withdraw, shall serve upon each of the other parties four months' notice in writing of his intention so to do, and if the parties cannot agree upon the terms of settlement, the matter shall be submitted to arbitrators, the party of the first part choosing one arbitrator, and the party of the second part choosing one arbitrator; and if the two arbitrators thus chosen cannot agree, they shall choose one other arbitrator and the award of a majority of the three arbitrators thus chosen shall be final and conclusive upon the parties to this contract."

*Rodney A. Mercur* and *Edward Overton*, for appellant. Defendants had the following rights under the following sections of the agreement; (3) the books shall be accessible to them at all times; (4) they to make weekly advances to Crandall out of the business, and to receive a per centage on the money invested as working capital; (5) to furnish a working capital, and to receive a percentage thereon, if they furnish it; (6) the annual adjustment and audit; (7) their right to receive securities for the money raised by them; (8) their right to continue the business after the death of any of the parties until the expiration of the term; and (9) their right to arbitrate in case of a disagreement. If defendants are not liable, it would give Crandall a false credit. Had he wasted or mismanaged the property, defendants could have had an injunction and receiver.

*D'A. Overton, John C. Ingham* with him, for appellee.—The stipulations of the agreement do not make the defendants partners. Access to the books might be accorded to them as indorsers or guarantors that they might know the condition of

the business. It could not make them partners unless the act of inspection of the books led others to believe they were partners, which is not alleged here; nor can agreement by one party with another, as in section 4, that he will use only a certain amount out of a business in which he is engaged, when the latter has no interest in the business further than furnishing money or credit, make them partners. Sharing profits in lieu of interest, does not constitute partnership: Act of April 6, 1870, P. L. 56. Annual adjustment and audit was for the sole purpose of division of profits. The right to continue the business after the death of any of the parties until the expiration of the term, means the business of indorsing and guaranteeing notes for Crandall. Section 9 provided for the right to arbitrate in case of disagreement. Disagreement about what? It would be difficult for even appellant's counsel to tell.

[The arguments as to other points raised are omitted as not involved in the decision.]

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

The plaintiff sues upon notes made by C. M. Crandall, one of the defendants, in his own name, and seeks to charge the other defendants as partners of Crandall in a business in which the proceeds of certain other notes, of which these were renewals, were used. The evidence relied upon to establish the alleged partnership is a contract in writing between Crandall of the one part, and the other defendants of the other part, dated February 24, 1885. If this contract does not create a partnership as to creditors it cannot be successfully contended that all the evidence in the cause taken together tends to charge anybody but Crandall; and inasmuch as all the assignments of error are predicated upon the assumption that such partnership was created by that contract, it is evident that if that assumption was unfounded the plaintiffs could not have been injured by the rulings complained of, and hence, though there may have been technical error therein, the judgment ought not to be disturbed. It is, therefore, pertinent to inquire what were the rights and liabilities of the parties under that contract although the question is not directly raised by any of the assignments of error.

The whole scope of the contract indicates that a loan of

money to Crandall by the other parties in consideration of a share of the profits of a business in which he was to embark was intended, and not a contribution to the capital of a partnership of which the parties were to be the members.  The parties of the second part covenanted to furnish three thousand dollars to Crandall, and not to a firm; they were to furnish it to him from time to time as he might require it, and its repayment to them was to be secured by a chattel mortgage upon the tools, machinery, furniture and fixtures of every kind and nature belonging to or connected with the business in which it was to be used.  Crandall might repay it at his option before the expiration of the full term for which he had the right to demand it; and, although it was stipulated that the money so to be furnished should be used in the business contemplated, the right of entire control of that business was recognized to be in, and was expressly conceded to Crandall.  And it was further stipulated that nothing in the writing contained should be construed to create a partnership between the parties thereto except as to the profits of the business.  These provisions are all consistent with the relation of borrower and lender, and some of them are inconsistent with any other relation.  It is therefore manifest that that relation was intended to be established; and the next question is whether, in spite of the intention of the parties, the community of interest in the profits constituted them a partnership as to creditors.

If this were a Pennsylvania contract the question would be answered in the negative by the act of April 6, 1870, P. L. 56, and by Hart v. Kelly, 83 Pa. 286.  But, although it was made in this state, it was to be executed in the state of New York.  Such cases are stated by approved text writers to be an exception to the general rule that the *lex loci* applies in respect to the nature, obligation and construction of contracts.  That exception is thus stated by Judge Story: " But where the contract is either expressly or tacitly to be performed in any other place the general rule is in conformity to the presumed intention of the parties that the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance:" Conflict of Laws, § 280.  Chancellor Kent, after stating the exception in substantially the same terms, adds that it " is more embarrassed than any other

branch of the subject (the *lex loci*) by distinctions and jarring decisions:" 2 Com. 459. But whatever conflict of authority there may be in respect to the exception, all agree that matters connected with the performance of a contract are regulated by the law prevailing at the place of performance. Brown v. Railroad Co., 83 Pa. 316 ; Scudder v. Union National Bank, 91 U. S. 406. Under the present contract it is clear there could be no liability to third persons without a performance as between the parties to it, and therefore the question of such liability would necessarily be connected with or grow out of such performance and be determinable by the law of New York.

More than a century ago Chief Justice De·Grey, in Grace v. Smith, 2 Wm. Bl. 998, laid down the proposition that " every man that has a share of the profits of a trade ought also to bear his share of the loss." In a few years the principle thus stated became recognized as a part of the law of England, and so continued until 1860, when it was overthrown by the House of Lords in Cox v. Hickman, 8 H. L. C. 268. On this side of the Atlantic, and especially in the state of New York, it was accepted without question, so far as I have observed, as to the soundness of the reasons put forth in support of it, until it was exploded in England. As early as 1819, Spencer, J., delivering the opinion of the court in Walden v. Sherburne, 15 Johns. 409, said : " No principle is better established than that every person is deemed to be in partnership, if he is interested in the profits of a trade, and if the advantages which he derives from the trade are casual and indefinite, depending on the accidents of trade." And although the judgment of the House of Lords in Cox v. Hickman was soon followed by many American courts, the New York court of appeals declared as late as 1874 in Leggett v. Hyde, 58 N. Y. 272, that the rule remained in that state as it had long been. But while the judgment of the court sustained the rule, the opinion of the learned judge who pronounced it betrayed dissatisfaction with it, and attempted to defend it on no other principle than that of *stare decisis*, and the chief justice dissented from the judgment itself. The question came before the court of appeals again in Richardson v. Hughitt, 76 N. Y. 55. In that case the defendant had entered into a contract in writing with a firm engaged in the business

of manufacturing wagons, by the terms of which they were to manufacture and deliver wagons to him and use their best efforts to sell them. He was to advance $50 on each wagon to be paid on the first day of each month, and at the time of each advance the firm was to render him an account of sales of wagons during the previous month, and pay him one quarter of the net profits thereon with interest on the advances. This instrument was construed to be a contract for the loan of money, and not to constitute a partnership. This was followed by Curry v. Fowler, 87 N. Y. 33, in which it appeared that certain persons, having purchased vacant ground in the city of New York and being about to erect buildings thereon, entered into a written contract with Fowler by the terms of which he was to advance $50,000 towards the purchase and erection of the buildings; in consideration of which they "agreed to share the profits of the said purchase and buildings with the said Fowler;" and he was to be allowed interest on his advances, and be secured by bond and mortgage on the premises. This contract was held not to create any other relation than that of borrower and lender; the same judge who delivered the opinion of the court in the case last cited saying: "In Richardson v. Hughitt, 76 N. Y. 55, it was held by this court that a person who has no interest in the business of a firm or in the capital invested save that he is to receive a share of the profits as a compensation for services, or for money loaned for the benefit of the business, is not a partner and cannot be held liable as such by a creditor of the firm." This language was repeated with approval in Cassidy v. Hall, 97 N. Y. 159. It is said however in Hackett v. Stanley, 115 N. Y. 625, that these cases and others in harmony with them do not overrule Leggett v. Hyde and its predecessors. But while this is affirmed it is said in the same case that, "exceptions to the rule (that participation in profits of a business renders the participant liable to creditors) are, however, found in cases where a share in profits is contracted to be paid, as a measure of compensation to employees for services rendered in the business, or for the use of moneys loaned in aid of the enterprise." It is not material to inquire how much more of the rule is left by this exception than was left by Cox v. Hickman. It is enough that the present case comes within the letter and

the spirit of the exception. The parties who made the loan and who are now sought to be held liable as partners had no voice or part in the prosecution of the business either as principals or otherwise, nor had they an irrevocable right to demand a share of the profits as was the case in Hackett v. Stanley. The right of control, or any voice in the control, an incident of proprietorship, was denied to them. And the implication of partnership from community of interest in the profits was excluded by an express stipulation, the absence of which in Hackett v. Stanley was thought to be worthy of notice : and their right to demand a share of the profits was to terminate upon repayment of the money advanced at the end of five years, or sooner at the option of Crandall. In all its material provisions the contract under consideration is not distinguishable from that in Curry v. Fowler, or from those provisions of the contract in Hackett v. Stanley which it is there conceded would create no other relation than that of borrower and lender.

For these reasons the defendants as to whom issue was joined are not liable to the plaintiff and therefore the judgment must be affirmed.