## Commonwealth v. One Columbia Automobile.

*Prohibition enforcement—Condemnation of vehicle used in unlawful trans-portation of intoxicating liquors—Rights of innocent seller under conditional sale contract, valid generally in a sister state, invalid in Pennsylvania as to bona fide purchasers or creditors—"Bailment contract"—"Lawful ownership or right of possession"—Act of March 27, 1923.*

1. Where an automobile, used in the unlawful transportation of intoxicating liquors, has been seized and turned over to the custody of the district attorney, under the provisions of the Act of March 27, 1923, P. L. 34, a person claiming to be entitled to have the vehicle delivered to him, under the provisions of clause (vi) of sub-division (*d*) of section 11 of the act, as being an "owner" without whose knowledge or consent the car had been put to the unlawful use, must show that at the time of seizure he was invested with the right of possession.

2. A having pleaded guilty to a charge of unlawful transportation of intoxicating liquors (by automobile) and having been sentenced, and the sentence having been executed, it appeared in a proceeding to condemn the automobile (which had been seized and was in the custody of the district attorney) that A had "purchased" and acquired possession of the car while a resident of West Virginia, under a conditional sales contract, valid in that state not only as between the parties, but also as to third persons, and which provided, *inter alia*, that title should not pass to the purchaser until payment in full of the purchase price; that in the event of default on any instalment, or in certain other events, the full amount owing should become due and payable at seller's election; that purchaser should keep the property free of taxes, liens and encumbrances, and should "not use same improperly or for hire," nor transfer any interest under the contract, that the interests of the purchaser and seller might be protected by insurance, to be paid for by purchaser; and that on default by purchaser in complying with the terms of the contract, seller might retake the property and resell it at public or private sale, having the right to bid at such sale, and from the proceeds, after deducting all expenses, including a reasonable attorney's fee, pay the amount due on the contract, any surplus to be paid over to the purchaser, with interest. It further appeared that A had paid a large proportion of the purchase price and, at the time of the car's seizure by the authorities, was not in default on account of any payment provided for in the contract. *Held*, (1) that one who had succeeded to the rights of the seller was not, at the time of the seizure of the car, invested with any such right to its possession as entitled him to have it delivered up to him out of the custody of the Commonwealth; (2) that A was at the time of the seizure the equitable owner of the car and invested with property rights with respect thereto, which were capable of being forfeited to the Commonwealth by the unlawful use which he made of it while in his possession; and (3) that, no rights of *bona fide* purchasers or creditors being involved, the contract, though it would in Pennsylvania be invalid as to them, was to be considered a "bailment contract," within the spirit and within the true intent and meaning of clause (iii) of sub-division (*b*) of section 11 of the Act of March 27, 1923, P. L. 34, so as to entitle the person who had succeeded to the rights of the seller to a decree that the amount owing by the purchaser on the contract should be paid out of the proceeds of the condemnation sale.

Petition for condemnation of automobile. Q. S. Washington Co., Nov. T., 1923, No. 256.

*Howard W. Hughes*, District Attorney, and *Thomas L. Anderson*, Assistant District Attorney, for Commonwealth.

*Paul A. A. Core*, for claimant.

BROWNSON, P. J., March 17, 1924.—The facts of this case, as they were developed at the hearing, are as follows:

### Facts.

1. On May 28, 1923, Frank Lewchenko, a resident of Brooke County, West Virginia, made a proposal to J. S. Cookson, a dealer, residing and doing business at Steubenville, Ohio, for the purchase of the automobile involved in this

case. This proposal having been accepted, the parties entered into a written "Conditional Sale Contract," bearing that date, a full copy of which is appended to the claim of the General Motors Acceptance Corporation, filed herein on Jan. 14, 1924. As Lewchenko lived in West Virginia, where the car was to be taken and kept by him, this contract was drawn so as to conform to the laws of that state.

2. By the terms of this contract Cookson sold, and Lewchenko purchased, the car in question for the price of $668, whereof $356 was paid in hand, and the remaining $312 was to be paid in monthly instalments of $52 each, the sale being made subject to terms and conditions, which included provisions to the following effect: That title should not pass to the purchaser until payment in full of the purchase price; that in the event of default on any instalment, or in certain other events, the full amount owing should become due and payable at seller's election; that purchaser should keep the property free of taxes, liens and encumbrances, and should "not use same improperly or for hire," nor transfer any interest under the contract; that the interests of purchaser and seller might be protected by insurance, to be paid for by purchaser; that on default by purchaser in complying with the terms of the contract, seller might retake the property and resell it at public or private sale, having the right to bid at such sale, and from the proceeds, after deducting all expenses, including a reasonable attorney's fee, pay the amount due on the contract, any surplus to be paid over to the purchaser, but in case of deficiency, the amount thereof to be paid by the purchaser, with interest. Upon the making of this contract possession of the car was delivered to Lewchenko, and it was taken to his home in West Virginia.

3. This contract was filed of record in Brooke County, West Virginia, on May 29, 1923, and upon such filing it became valid under the laws of that state, not only as between the parties, but also as to third persons.

4. Within a day or so after such filing Cookson assigned and transferred to the General Motors Acceptance Corporation, the claimant, all his rights upon and under the contract.

5. Lewchenko paid the instalment of purchase money which matured June 28, 1923. He has not paid the instalments subsequently maturing.

6. On or about July 21, 1923 (before the July instalment of purchase money matured), Lewchenko brought this car into Pennsylvania, procured a quantity of intoxicating liquor, and used this car for the transportation of such liquor in and through Washington County, Pennsylvania, whereupon, while in the act of such transportation, he was arrested, and the car was seized and turned over to the custody of the district attorney. At No. 196, August Term, 1923, of this court, Lewchenko pleaded guilty of such unlawful transportation, and on July 30, 1923, he was sentenced to pay the costs and a fine and to undergo imprisonment. This sentence has been executed, the imprisonment having been undergone, and the fine and costs having been paid by Lewchenko.

7. The use of this car by Lewchenko for the unlawful transportation of intoxicating liquors was without the knowledge or consent of the claimant.

### Discussion.

As to Frank Lewchenko, and as to every one other than the claimant, the Commonwealth is clearly and unquestionably entitled to a decree for the condemnation and sale of this automobile. We need discuss only the question whether either of the alternative claims advanced by the General Motors Acceptance Corporation can be sustained.

## Commonwealth v. One Columbia Automobile.

The conditional sale contract entered into between J. S. Cookson (to whose rights the claimant has succeeded) and Frank Lewchenko was signed in Steubenville, Ohio, but was made with reference to the laws of West Virginia, and with the intention and purpose that possession should be held by Lewchenko, under it, in that state, wherein he lived, and it was filed for record, under the laws of the latter state, in the county of his residence. The effect upon its validity of the separation between the title and the possession would, therefore, seem to be determinable by the law of West Virginia (Waverly Bank v. Hall, 150 Pa. 466, 472-73; Musser v. Stauffer, 192 Pa. 398), subject, however, to the rule that the courts of Pennsylvania will enforce any stipulations which would not be valid under the laws of Pennsylvania, only so far as such enforcement will not interfere with the domestic interests and policy of this State: Com. v. Cutshall, 4 D. & C. 683, and authorities cited. Under the laws of West Virginia, this contract effected a valid reservation of the title to the seller until payment in full of the purchase price, and of a right to retake possession upon any default of the purchaser in complying with the terms of the contract, these reservations being good not only as to the purchaser himself, but also as to third persons.

1. The first claim made by the General Motors Acceptance Corporation is that, by virtue of the reservation of title made in the contract, it is an "owner," entitled to have the car delivered to it under the provisions of clause (VI) of sub-division (d) of section 11 of the Act of March 27, 1923, P. L. 34, the unlawful use made of it by Lewchenko having been without its knowledge or consent. The Commonwealth contends that the claimant is not an owner within the meaning of that clause of the statute; that the owner entitled to receive possession of the car is one who was invested at the time of the seizure not only with the title, but also with the right of possession. To hold that the test of the right of a claimant to have the car delivered to him under sub-division (d), clause (VI), is a right of possession, would seem to be in accordance with the general intent manifested by the language of the statute, and this seems to be strongly implied by some of the specific provisions. Clause (IV) appears to make the right of possession the issue, or a principal issue, in the case: The issue is to be formed by a claim "setting forth a right of possession." This must, of course, be considered in connection with clause (VI), which provides for the filing of a claim alleging the claimant's "lawful ownership thereof or right of possession thereto." Are these two clauses mutually inconsistent, or does the latter derogate from the effect of the former? We think not. Construing them together, they can be harmonized so as to be in accordance with the Commonwealth's contention. The word "or" is frequently used in the sense of "or, in other words," or "that is to say." If, however, we should not give it that meaning here, but consider that the "lawful ownership" and "right of possession" are disjunctively mentioned as separate things, then, interpretating these phrases in the light of clause (IV), the apparent meaning is that the claimant must aver either the general ownership of the vehicle (which carries with it and embraces the right of possession), as else a particular or special right of possession in himself, carved by contract out of the general right of possession which is an incident of the general ownership—in other words, the existence in him (if he does not have the general ownership) of a particular or special ownership, carved out of the general ownership, and giving him the right of possession. The disjunctive form of expression is thus entirely consistent with the clear requirement in clause (IV) that, in order to raise an issue for determination by the court, a right of possession in the claimant must be exhibited. Then, further, a part

of the proof required to be made by the claimant is that the vehicle "was lawfully . . . possessed and used by him," or that its unlawful use by another was without his knowledge or consent, requirements which would seem to be based upon the assumption that the claimant had such control over its use as the right of possession would give him. Finally, the provision that the vehicle may be ordered to be "returned to said claimant," clearly implies the existence in him of a right of possession.

Thus, to make a right of possession the criterion will not interfere with the operation of clause (VI) in the way of affording protection to the classes of persons whom apparently it was designed to protect. These persons are (*a*) owners whose vehicles have been unlawfully taken, by theft or otherwise, and used by the taker, in violation of the statute, without their knowledge or consent; and (*b*) owners who have by some form of bailment—other than the special kind of "bailment contracts" referred to in clause (III) of sub-division (*b*)—placed the possession, for a lawful purpose, in another person who has misused the property by unlawfully diverting it, without the bailor's consent, to another use which is in violation of the statute. In the first of these cases, the unlawful taker, while he has the physical possession, has no right of possession, this remaining in the owner. In the second, the bailee's right of possession would terminate just as soon as he undertook or attempted to divert the property to another use than that for which it was bailed to him, and thereupon the general right of possession, out of which the bailee's terminated special right of possession had been carved, would instantly give the owner a right to reclaim the property. Thus every claimant of the classes mentioned would be able to show a right of possession in himself. '

We think the ownership referred to in clause (VI) is an ownership which embraces the right of possession.

We have next to consider whether the contract on which the present claim is based brings it within clause (VI) as thus interpreted.

By this contract of conditional sale the seller reserved the title until the purchase price should be paid in full, and the right to retake possession in the event of a default of the purchaser in complying with the terms of the contract. At the date of the seizure there were no instalments of purchase money in default, but the contract contained a covenant that the purchaser should not use the car "improperly," which word the claimant interprets as including "unlawfully," and it claims that when the purchaser, having brought the car into Pennsylvania, here undertook to use it for the unlawful transportation of liquors, this was such a breach of the terms of the contract as entitled claimant instantly to retake possession. Assuming for present purposes (without considering the argument of the Commonwealth to the contrary based upon the particular language used) that this unlawful use did have the effect of giving claimant a contract right to retake possession, it also had the effect of vesting a statutory right of possession in the Commonwealth, and the latter, it would seem, ought to prevail over the former.

However, let us consider the nature and purpose of the reservations contained in the contract. The contract was one of sale for a specified price, more than half of which was paid in hand, and the remainder was payable in instalments. Possession for general purposes was delivered to the purchaser. The title was reserved, but the purpose of this reservation was to secure and enforce payment of the unpaid purchase money. The right to retake possession was reserved, but by the provisions of the contract, such retaking would not invest the vendor with the right of possession for all purposes; it would not give the right to use the car as if it were the vendor's own. After the

retaking, the possession would be held, along with the title, only for the specific purpose of making a foreclosure sale for the collection of the unpaid purchase money, and upon the making of such sale the vendor would be entitled only to so much of the proceeds as would suffice to pay the costs and expenses and the purchase money due. It is quite evident that under the contract the purchaser became the equitable owner of the car; he was the beneficial owner to all intents and purposes, subject only to the vendor's right to take possession for the purposes of a foreclosure sale; and even if such possession had been taken, he would still remain the equitable owner, subject to the vendor's rights and remedies, until the foreclosure sale would be made, and as such he would be entitled to participate in the distribution of the proceeds. It seems clear that at the date of this seizure Lewchenko was invested with property rights respecting this car which were capable of being forfeited to the Commonwealth by the unlawful use he made of it while in his possession, and that the claimant had then no such right of possession as would interfere with the right of the Commonwealth to seize and condemn it. We do not think the claimant is entitled to take the possession away from the Commonwealth under clause (VI).

This brings us to the second or alternative claim advanced.

2. It is contended that if the claimant be not entitled to a decree in its favor under clause (VI), it is entitled, under clause (III) of sub-division (b), to a decree that the amount owing to it shall be paid out of the proceeds of the condemnation sale. The Commonwealth resists this claim upon the ground that the contract involved is not a "bailment lease or contract."

The reservation in this contract of the title and the right to retake possession is valid, under the law of West Virginia, not only as between the parties themselves, but also as to third persons, but the law of Pennsylvania, as it existed prior to the enactment of the Uniform Sales Act of May 19, 1915, P. L. 543, would not have enforced it as against bona fide purchasers or creditors. That statute provides, in section 20, that a seller may reserve the title "notwithstanding the delivery of the goods to the buyer." Does this have the effect of altering the pre-existing law whereby the rights of bona fide purchasers and creditors were regulated? In view of the fact that this statute was drafted by a conference of the State Commissioners on Uniform Laws, and that this same conference drafted and proposed to the state legislatures a separate act for the purpose of regulating the rights of bona fide purchasers and creditors in connection with conditional sales, and of the fact that at the same session of the legislature a conditional sales law was enacted, applying to a limited class of contracts (Act of June 7, 1915, P. L. 866), we think Judge Orr was correct in holding, in the case of In re Mina, 270 Fed. Repr. 969, that the Uniform Sales Act (1915, P. L. 543) was not intended to regulate the rights of third persons, and that the previous law of Pennsylvania on this subject, so far as relating to contracts not within the scope of the Act of June 7, 1915, remains unchanged. We have in this case, however, no question as to the rights of bona fide purchasers or creditors. As it appears that Lewchenko has performed his sentence, paying in full the fine and costs imposed upon him, the Commonwealth cannot be regarded as occupying the position of creditor in respect thereof. Would the recognition and enforcement of this contract here contravene, in any other respect, the positive law or public policy of Pennsylvania? A stipulation of the parties that, in the event of an unlawful use of the property, the seller shall have the right to retake possession should not be allowed to prevent the Commonwealth from exercising its statutory right to seize and hold the property for the purpose

of carrying on a condemnation proceeding against it on account of such unlawful use. So much we have in effect already said. See, also, Com. v. Cutshall, 4 D. & C. 683. But having held that the Commonwealth is entitled to have a sale of this car made, the remaining question is merely whether, out of the proceeds of this sale, the claimant can be paid the amount owing to it in the same way as would be done if a sale were made under the contract.

Clause (III) of sub-division (b) provides for such a payment in case of a "bailment lease or contract." This is not a lease; is it a "bailment contract?" A severance of the title and possession by the agreement or act of the owner, so that the title remains in him, while the possession has been given by him to another, is the fundamental characteristic and criterion of a bailment. In this instance there is a severance, the seller retaining the title while delivering the possession. This clearly is not a transaction of the kind that is commonly designated by the term bailment when used in a sense contradistinguished to that of a conditional sale. That is to say, it is not a bailment for use merely; it is not such a bailment that, under the Pennsylvania decisions, the retention of title would be valid as against a bona fide purchaser or a creditor. But we have nothing to do in this case with bona fide purchasers or creditors, and, as between the parties, the contract is valid and effective in all its terms. They intended that so long as any of the purchase money should remain unpaid, and until a breach by the vendee, the title should be in one party and the possession in the other, the latter holding the possession under and in subordination to the title which remained in the former. This amounts to, and in substance is, a bailment, using this term in its widest and most comprehensive sense, good (under Pennsylvania law) as against everybody but a bona fide purchaser or a creditor. The provisions of clause (III) were not drawn with any reference to the theoretical rights of possible purchasers and creditors; when no purchaser is before the court as a claimant, and there is no creditor who has taken steps to enforce his debt against the property, the rights to be considered under that clause are those of the parties to the contract. The statute, then, regarding the bailee as a party in possession, invested with the right by making certain payments to become the legal owner—in other words, as a party having an equitable property right, and regarding the bailor as a party whose contract right is, primarily, to receive payment of the stipulated sums of money, and whose legal title is to pass out of him if payment thereof be made, treats the property as forfeitable if unlawfully used by the bailee, and gives to the bailor, out of the proceeds of its sale, the moneys owing to him, considering that this is all that is necessary to protect him as an innocent party against the consequences of the bailee's dereliction. Such being the idea and aim of the statute, it seems to us that the contract now before us comes within the spirit, and is fairly within the true intent and meaning, of clause (III). The distinction between a contract of this kind and one in which it is stipulated that the bailee shall, in the first instance, occupy the position of a hirer of the property, and the payments he is to make (although in truth regarded in the minds of the parties as instalments of purchase money) are denominated in the words of the contract as "rentals for use," is rather a technical one. For the purposes of a case in which the rights of bona fide purchasers or creditors are not involved, and as between the parties themselves, the difference would seem to be rather in the form in which the contract is drawn than in the substance of the fundamental purpose intended to be accomplished by it. The Act of 1923 looks beneath the form, and proceeds upon the basis of what is the ultimate purpose of the parties. Forfeiture of property rights is a very drastic thing, and a statute ought not to be construed as working a for-

feiture of property rights of innocent persons unless such forfeiture is clearly within its intended meaning. Taking into account the intended purpose of clause (III), we think its words ought to be construed liberally enough to make them applicable to a case like the present, especially as the contract is one made in strict conformity with the laws of West Virginia. It is a contract that is within the spirit of clause (III), and the phrase "bailment contract" is fairly capable of being regarded as intended to bear such an interpretation as would bring the case within the letter.

And now, March 17, 1924, after hearing and due consideration, the court having found the facts which are set forth in the opinion herewith filed, it is adjudged and decreed that the Columbia automobile described in the petition of the district attorney has been forfeited to the Commonwealth, and the same is hereby condemned and ordered to be sold by the sheriff of this county at public sale, after notice as provided by the Act of March 27, 1923, P. L. 34; and it is further ordered that the claim of the General Motors Acceptance Corporation for moneys, to the amount of $260, due to it upon the contract, a copy of which is set forth in its claim filed on Jan. 14, 1924, shall attach to and be paid out of the proceeds of such sale after payment of costs, the balance of such proceeds to be paid to the county treasurer in accordance with the provisions of said statute.　From E. E. Crumrine, Washington, Pa.