## Lamborn et al. v. Miller et al.

*Sales — Contracts — Place of performance — Sight drafts — Delivery — Inspection—New York Uniform Sales Act.*

1. The contract provided for delivery of sugar to the railroad, f. o. b. cars, New York, payment to be made by sight draft, bill of lading attached: *Held*, that the contract was to be performed in the State of New York, and the laws of New York applied to all matters relating to performance, and as, under the New York decisions construing the Uniform Sales Act, where the purchase price is to be paid by sight draft with bill of lading attached, payment is a condition precedent to delivery inconsistent with the right of inspection, and inspection is not allowed, the buyer was not entitled to inspection before paying the draft.

*Sales—Contracts—Performance—Refusal to accept—Vendor may resell—Market price.*

2. Where a vendor has completely performed his part of the contract, and the vendee refuses to receive the goods, the vendor may sell the goods for the market price at the place of delivery, but in making the sale he is bound to exercise reasonable and intelligent judgment in ascertaining the market price at that point.

Rule for judgment *n. o. v.* C. P. Erie Co., Sept. T., 1921, No. 403.

*Brooks, English & Quinn,* for plaintiff.

*Gunnison, Fish, Gifford & Chapin,* for defendants.

HIRT, J., May 12, 1924.—This is an action brought by plaintiff to recover damages resulting from defendants' refusal to accept a shipment of sugar. The contract relied upon by plaintiff is in writing, signed by plaintiff and accepted by defendants, the material portions of which are the following:

"To Jacob Haller, Erie, Pa. "June 24th, 1920.

"We have this day sold to you for account of ourselves 60 Tons (of 2240 lbs. each) Ten percent more or less Argentine Granulated, grade "A" Sugars At Twenty-four and one-half (24 1-2) Cents per pound duty paid, less 2% f. o. b. cars, New York, landed weights Afloat at option of the sellers from Argentine by steamer or steamers to New York. Names of such steamer or steamers to be declared later.

"Payment to be made by net cash on presentation of sight draft with invoice and bill of lading attached.

"Accepted: Jacob Haller, Chas. J. Haller. LAMBORN & CO."

The sale was solicited by plaintiff through its agent at Erie. The contract was executed by plaintiff in New York, sent to defendants at Erie and was executed by them here. The sugar contemplated by the contract was a part of a cargo shipped from Rosario, Argentina, on June 15, 1920, which arrived in New York on July 21, 1920, and on Aug. 6, 1920, 1050 bags of this sugar were delivered by plaintiff to the Erie Railroad Company for defendants and arrived in Erie Aug. 12, 1920, and defendants were notified of its arrival. The defendant demanded the right of inspection, which was refused by plaintiff, whereupon defendants refused to pay the draft and refused the shipment.

At the trial, defendants offered testimony to the effect that the written order and acceptance do not contain the whole contract, but that there were parol contemporaneous representations which induced the execution of the written contract by them. These representations were alleged to have been made by the agent of plaintiff company who solicited the order, and consisted in his statement that, at the time of the placing of the order, the sugar was afloat and would arrive in New York about June 15, 1920; and, further, that he submitted to defendants a sample of sugar which he represented to be the kind of sugar which would be delivered under the contract, and this sample

compared favorably with the finest grades of American granulated and could not be distinguished therefrom, except that it was slightly coarser in grain. There is some evidence to the effect that, at the time of the delivery of the sugar to the Erie Railroad at New York, some of the bags were discolored, but, nevertheless, the shipment was receipted for by the railroad, in good condition. The two cars in which the shipment was placed were weather tight. The sugar, however, when it arrived in Erie, was wet and was not in condition to be merchantable as high-grade granulated sugar. A car of this same sugar had been delivered to another consignee in Erie prior to the arrival of this shipment in bad condition. This fact was known to defendants, and for this reason they demanded inspection before payment of the draft.

Two months after the refusal of the shipment by defendants, plaintiff sold a part of the shipment at 8 cents and the remainder at 8½ cents per pound, and asked for a verdict for the difference between the price obtained and 24½ cents, the contract price. The jury found for the plaintiff for an amount considerably less than the difference between the contract and the sale price.

We submitted to the jury the testimony offered by defendants to vary the terms of the written contract, and also the question of the condition of the sugar when delivered by plaintiff to the railroad company, and the verdict of the jury establishes that the contract was fully performed by plaintiff and that the sugar delivered was of the kind specified in the contract, and that it was in merchantable condition when delivered by plaintiff to the railroad company.

Both plaintiff and defendants ask for judgment n. o. v., plaintiff's motion for a new trial having been withdrawn.

It is defendants' contention that, under the law, they were entitled to inspect the shipment before paying the draft, and that plaintiff's refusal of such inspection relieves them from liability under the contract. Inasmuch as the contract provided for delivery of the sugar to the railroad "f. o. b. cars New York," the contract in the contemplation of the parties was to be performed by plaintiff in the State of New York (Griffin v. Metal Product Co., 264 Pa. 254, 256), and we instructed the jury that, for this reason, all matters relating to the performance of the contract are regulated by the law of the State of New York. This we believe to be the law. Contracts are presumed to be entered into with reference to the place of performance: Waverly Bank v. Hall, 150 Pa. 466; Bennett v. Building and Loan Ass'n, 177 Pa. 233; Musser v. Stauffer, 192 Pa. 398; Burnett v. Pennsylvania R. R. Co., 176 Pa. 45; Phœnix Silk Co. v. Reilly, 187 Pa. 526. The evidence is that the Sales Act in force in the State of New York is substantially identical with the Sales Act of Pennsylvania. Paragraph 3 of section 47 of the Act of May 19, 1915, P. L. 543, corresponding with sub-division 3 of section 128 of the New York Sales Act, provides as follows: "Where goods are delivered to a carrier by the seller in accordance with an order from or agreement with the buyer, upon the terms that the goods shall not be delivered by the carrier to the buyer until he has paid the price, whether such terms are indicated by marking the goods with the words 'Collect on delivery,' or otherwise, the buyer is not entitled to examine the goods before payment of the price, in the absence of agreement (and proper written authority to the carrier) permitting such examination."

The phrase in the parenthesis is not in the New York State Act. It is defendants' position, notwithstanding this provision of the Sales Act, that they had the right of inspection before payment of the draft. In Pennsylvania this section has not been construed by the appellate courts, but, assuming that our courts would give to the act a construction allowing inspection, nevertheless, we are of the opinion, under the above authorities, that, inas-

much as performance was contemplated in the State of New York, the laws of that state must control. According to the evidence, this section of the Sales Act has been construed in New York State in two reported decisions, Imperial Products Co. v. Capitol Chemical Co., 176 N. Y. Supp. 49, and Brown v. Raritan Chemical Works, 177 N. Y. Supp. 309. Under these decisions, where the purchase price is to be paid, by the terms of the contract, by sight draft, with bill of lading attached, payment is a condition precedent to delivery, inconsistent with the right of inspection, and inspection is not allowed. Defendants' motion for judgment n. o. v. cannot be granted for the reasons indicated above; the law of the State of New York governs, and, under that law, defendants had no right of inspection.

On the failure of defendants to pay the draft and receive the goods, plaintiff had the right to sell the sugar, after making a reasonable effort to secure the best price, and to proceed against the defendants to recover any resulting deficiency: Minkin v. Fischer, 72 Pa. Superior Ct. 32. Where a vendor stands in the attitude of complete performance on his part and the vendee refuses to receive the goods, the vendor may sell the goods for the market price at the place of delivery, but, in making the sale, he is bound to exercise reasonable and intelligent judgment in ascertaining the market price at that point: Guillon v. Earnshaw, 169 Pa. 463. The questions of market value of the sugar and as to whether plaintiff made a reasonable effort and exercised intelligent judgment to secure the best price, in this case, were questions for the jury. Plaintiff resold about one-half of the sugar at 8 cents per pound and the remainder at 8½ cents per pound.

From the amount of the verdict, we must assume that the jury found that a better price might have been obtained by the exercise of reasonable effort. The testimony is that, between the dates of the refusal of the shipment by defendants and the date of the resale, plaintiff sold other sugar of the same kind and grade at prices greatly in excess of the resale price, and evidence of these sales has a material bearing, in view of the testimony that the market price of sugar is established at New York and Philadelphia, and that market prices at other points are determined by adding the freight to these basic market values. In addition to the testimony of other sales by plaintiff, defendants, by the witness Charles J. Haller, offered testimony to the effect that in Erie during the period in question there was a market for sugar at prices higher than the resale prices. The admission of the testimony of this witness over objection constitutes one of the errors alleged. There is in the case the testimony of a member of plaintiff partnership, who described Argentine granulated Grade A sugar as the equal of the finer grades of American granulated, and said that it cannot be distinguished. The witness, Charles J. Haller, has had a long experience in handling sugar and based his opinion upon the testimony of plaintiff as to the character of the sugar contemplated by the contract. He testified that there would be no prejudice against a foreign sugar if it were in fact the equal of American grades, and assuming Argentine granulated Grade A sugar to be the equal of the best grades of American granulated, that it would have sold here in competition with American sugar at the same price, and that during the period in question in Erie there was a sale for sugar of this quality at prices named by him, which were greatly in excess of the resale price. There is also evidence on behalf of defendants to the effect that a carload of this same sugar, in the same condition as the Haller shipment, was sold on Aug. 26, 1920, at 13½ cents per pound. We believe that all of this evidence was competent as having a bearing on the questions whether there was a market for the sugar after the

Lamborn et al. *v.* Miller et al.

breach of the contract and whether plaintiff made a reasonable effort to secure the best price on a resale of the sugar, and this testimony was fairly submitted to the jury. Under all of the evidence in the case, the jury were justified in the conclusion that plaintiff failed in the duty to exercise a reasonable effort to dispose of this sugar for the best price obtainable and in charging to plaintiff that portion of the loss which resulted in the failure in that respect.

*Order.*

And now, to wit, May 12, 1924, the rule to show cause granted on plaintiff's and upon defendants' motions for judgment *n. o. v.* are discharged, and the prothonotary is directed to enter judgment on the verdict upon payment of the jury fee.          From Lytle F. Perry, Erie, Pa.